UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jake Coker, ) | |
| ) | Civil Action No.: 3:20-cv-03071-MGL |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **AMENDED COMPLAINT** |
| Norwich Commercial Group, Inc., Phil ) | |
| DeFronzo, Gerry Gordon, Russell Baboff, ) | |
| Greg Radding, Jim Morin, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

COMES NOW, Plaintiff, Jake Coker, by and through his undersigned counsel, complaining of the Defendants, would respectfully show the Court:

1. The Plaintiff is a citizen and resident of Richland County, South Carolina.

2. Defendant Norwich Commercial Group, Inc. (hereafter "Norcom") is a foreign corporation which at all time relevant to this case does business throughout South Carolina and is subject to the jurisdiction of this court pursuant to S.C. Code §36-2-803, and venue is proper in Richland County.

3. Defendant Phil DeFronzo (hereafter "DeFronzo") is, upon information and belief, a citizen and resident of Connecticut and is subject to the jurisdiction and venue of this Court.

4. Defendant Gerry Gordon (hereafter "Gordon") is, upon information and belief, a citizen and resident of Connecticut and is subject to the jurisdiction and venue of this Court.

5. Defendant Russell Baboff ("Baboff") is, upon information and belief, a citizen and resident of Connecticut and is subject to the jurisdiction and venue of this Court.

6. Defendant Greg Radding ("Radding") is, upon information and belief, a citizen and resident of Connecticut and is subject to the jurisdiction and venue of this Court.

7. Defendant Jim Morin ("Morin") is, upon information and belief, a citizen and resident of Connecticut and is subject to the jurisdiction and venue of this Court.

8. Plaintiff was employed by Norcom in approximately April 2014 as a mortgage broker. Plaintiff left the employment of Norcom in 2016 for approximately six months returning to work with Norcom later in 2016.

9. Plaintiff worked as a Branch Manager in Irmo, Richland County, South Carolina originating mortgages and earned a salary plus commissions on the mortgages he sold/originated.

10. In approximately November 2018, Nocom began a joint venture program with other real estate companies (the "Joint Ventures").

11. For these Joint Ventures, Norcom owned 51% and the joint partner owned 49%.

12. The Branch Manager that recruited the joint partner would receive the all of the 51% share Norcom received from the joint venture profits. Norcom would make money on the margin on the interest rates for the loans that were sold through the Joint Ventures.

13. During the period between December 2018 through March 2019, Plaintiff recruited three joint ventures: Sterling Mortgage in Charleston, South Carolina, Veracity Lending in Rockwall, Texas, and Clear2Close in Dallas, Texas.

14. Plaintiff worked hard to build a pipeline of business through these Joint Ventures during this time period.

15. On March 29, 2020, Plaintiff send the president of Norcom, Phil DeFronzo, James Morin, Greg Radding, and Russell Baboff an email detailing the pipline of business

these new Joint Ventures had generated. The pipeline of business forcasted income to Plaintiff of approximately $50,000 for the next month and was expected to continue in a similar fashion into the foreseeable future.

16. During this time, Norcom was aware that if Plaintiff stopped working for Norcom, Norcom, not Plaintiff, would receive the sizable stream of income generated by these Joint Ventures.

17. Within six days of realizing the how much money Plaintiff would make from his sales efforts including these joint ventures, Defendants terminated Plaintiff April 4, 2019 and intentionally and maliciously manufactured and spread false accusations against Plaintiff that he had commited fraud in his business, was allowing unlicensed loan origination activity, and had lost his mortgage brokerage license as justification to terminate Plaintiff and to give reason for Plaintiff's business connections, including these joint ventures, to discontinue future mortgage business with Plaintiff.

18. Defendant Norcom, by, through, and at the direction of their owners, officers, employees and agents, Defendants Phillip DeFronzo, Gerry Gordon, Russell Baboff, Greg Radding, and Jim Morin, made malicious, unprivileged, false and defamatory statements concerning Plaintiff in reckless disregard for the truth and with conscious knowledge of the falsity of the same to employees of Norcom, owners and managers of the joint ventures, to regulatory authorities, and to others.

19. On information and belief, in early April, 2019, Norcom maliciously reported Plaintiff to the Texas Department of Savings and Mortgage Lending for allowing unlicensed loan origination activity and for violations of the Texas Finance Code. These reports

were knowingly false and were intended to cause Plaintiff to lose his brokerage license and to harm Plaintiff reputation personally and professionally.

20. In response to Norcom's reports regarding Plaintiff, the Texas Department of Savings and Mortgage Lending found that Plaintiff violated no provisions of the Texas Finance Code and took no disciplinary action against Plaintiff or his licenses to broker mortgages. No regulatory authority has ever revoked or suspended Plaintiff's licenses to broker mortgages in any state. Plaintiff has not received any discipline of any type from any regulatory authority as a result of Norcom's accusations.

21. After his termination, Plaintiff struggled to find work in the mortgage brokerage business, and he struggeled to create, maintain and develop relationships with realtors and other referral sources due to the false accusations by Defendants that he had engaged in fraud in his business relations, had allowed unlicensed loan origination activity, and had lost is mortgage brokerage license.

22. The actions of the Defendants, jointly and severally, caused Plaintiff humiliation, harm to his personal and professional reputation, caused Plaintiff to not received wages and commissions he was entitled to, loss of future income, loss of reputation, loss of privacy, costs in having to defend false allegations, and general devastation to his professional livelihood.

## FOR A FIRST CAUSE OF ACTION
(Civil Conspiracy)

23. The preceding allegations are incorporated herein as if repeated verbatim.

24. Beginning in approximately early April 2019, Phil DeFronzo, Gerry Gordon, Russell Baboff, Greg Radding, Jim Morin and (the "Conspirators") entered into a conspiracy

to take from Plaintiff the commissions and other earnings due Plaintiff from the work he performed at Norcom.

25. After seeing the substantial business Plaintiff had generated and realizing the substantial commissions he would be owed from this business, the Conspirators developed a plan to terminate Plaintiff in such a manner as to prevent him from taking the customers and business he developed to a competitor when he left Norcom.

26. In April 2019, the Conspirators decided to terminate Plaintiff from his position at Norcom while simultaneously making a false report to the Texas Department of Savings and Mortgage Lending related to alleged violations of the Texas Finance Code.

27. About this same time, the Conspirators began spreading false information about Plaintiff to his customers in an effort to deter Plaintiff's customers from moving their business to Plaintiff's new brokerage.

28. The Conspirators told Plaintiff's customers, referral sources and other business contacts that Plaintiff had commited fraud in his business activities, was allowing unlicensed loan origination activity, and had lost his mortgage brokerage license, all of which were false.

29. The spreading of this information was false, unjustified, unlawful, and improper and was intended to enrich the Conspirators by giving these customers and referral sources reason to stop doing business with Plaintiff and to start doing business directly with themselves and their company.

30. The misinformation conveyed by the Conspirators casued Plaintiff significant harm to his past and future income as the false information spread by the Conspirators had its

intended effect of dissuading current and future customers and referral sources from doing business with Plaintiff.

31. The Conspriators then profited by taking the present and future commissions and earnings Plaintiff would have earned for themselves.

32. As a result of the actions of this civil conspiracy, Defendants are jointly and severally liable to Plaintiff for all actual, consequential and punitive damages caused by the conspiracy.

## FOR A SECOND CAUSE OF ACTION
(Defamation)

33. The preceding allegations are incorporated herein as if repeated verbatim.

34. On or about April 4, 2019, Jim Morin spoke to Plaintiff's partners with Sterling Home Mortgage as well as agents Topher Kauffman and Jessica Brand in Charleston, South Carolina. Jim Morin told them that Plaintiff had been terminated from Norcom due to fraudulent mortgage origination activity, and that the mortgagae licence regulating authorities had already revoked Plaintiff's licenses in multiple states including Texas and South Carolina. These statements were unprivileged and false.

35. On or about April 4, 2019, Greg Radding and Russell Baboff were in Dallas, Texas and told Plaintiff's partner, Drew Colon of C2C home mortgage and the owner of Modtown realty, that Plaintiff had been terminated from Norcom due to fraudulent mortgage origination activity, and that the mortgagae licence regulating authorities had already revoked Plaintiff's licenses in multiple states including Texas and South Carolina. These statements were unprivileged and false.

36. On or about April 4, 2019, Greg Radding and Russell Baboff were in Dallas, Texas and told to Plaintiff's partner, Jessica Hargis of Veracity Lending and owner of Hargis

realty, that Plaintiff had been terminated from Norcom due to fraudulent mortgage origination activity, and that the mortgagae licence regulating authorities had already revoked Plaintiff's licenses in multiple states including Texas and South Carolina. These statements were unprivileged and false.

37. On or about April 4, 2019, Gerry Gordon came into Plaintiff's office in Columbia, South Carolina and in the presence of Plaintiff's employee, Sabra Lane, proceeded to terminate Plaintiff justifying the action by claiming that Plaintiff had committed fraud and unlicensed loan officer activity. These statements were unprivileged and false.

38. Further, the above statements were defamatory per se as these statements include allegations of an impropriety or inadequacy in the performing of Plaintiff's trade or profession as a mortgage broker.

39. As a direct and proximate result of the aforesaid defamation by the Defendants, the Plaintiff has sustained loss of his personal and professional reputation, lost wages, a loss of earning capacity, humiliation, embarrassment and emotional and mental suffering.

40. Jim Morin, Gerry Gordon, Russell Baboff, and Greg Radding were all acting on behalf of and/or as agent of Norcom at the time these statements were made.

41. As a result of these defamatory statements, Norcom, Gerry Gordon, Russell Baboff, Greg Radding, and Jim Morin are liable to Plaintiff for all actual, consequential and punitive damage in an amount to be shown at trial.

42. Norcom is liable to Plaintiff as these defamatory statements were made by agents of Norcom and for at least the partial benefit of Norcom. Norcom is also liable to Plaintiff

for these defamatory statements under the theory of vicarious liability/respondeat superior.

43. The Plaintiff is also entitled to punitive damages against the Defendants for the malicious, intentional and willful conduct described herein to punish and deter and to make an example.  The Plaintiff further asks for the costs of this action to be leveed upon Defendants.

## FOR A THIRD CAUSE OF ACTION
(Breach of Contract)

44. The preceding allegations are incorporated herein as if repeated verbatim.

45. Plantiff and Norcom had a contract that provided for compensation for Plaintiff that included a base salary of $5,000 and a commission on loans made and revenue generated at his branch ("Branch Management Agreement").

46. The Branch Management Agreement provided that upon termination, Plaintiff would receive 100% of the compensation on loans that his branch originated if closed within 30 days of termination and 50% of the compensation on loans that his branch originated if closed within 31-60 days of termination.

47. Norcom failed to pay Plaintiff the amounts due under the Branch Management Agreement and is therefore liable to Plaintiff for these amounts.

48. Norcom also had a contract with Plaintiff to pay him and/or his branch all of the 51% of the income received from the Joint Ventures Plaintiff recruited.

49. Norcom breached this contract by failing to pay Plaintiff the 51% of the income received from these Joint Ventures Plaintiff recruited.

50. As a result of breaching these contracts Norcom is liable to Plaintiff for all actual, consequential and punitive damages in an amount to be determined at trial.

### **FOR A FOURTH CAUSE OF ACTION**
(Breach of Contract Accoumpanied by a Fraudulent Act)

51. The preceding allegations are incorporated herein as if repeated verbatim.

52. Plantiff and Norcom had a contract that provided for compensation for Plaintiff that included a base salary of $5,000 and a commission on loans made and revenue generated at his branch ("Branch Management Agreement").

53. The Branch Management Agreement provided that upon termination, Plaintiff would receive 100% of the compensation on loans that his branch originated if closed within 30 days of termination and 50% of the compensation on loans that his branch originated if closed within 31-60 days of termination.

54. Norcom also had a contract with Plaintiff to pay him and/or his branch all of the 51% of the income received from the Joint Ventures Plaintiff recruited.

55. Norcom intented to incentivize Plaintiff into generating long term streams of business with the promised commissions set forth in these contracts.

56. Norcom entered into the above-referenced contracts with Plaintiff with the intent to terminate Plaintiff without justification so that it could unjustifiably take the stream of business Plaintiff created.

57. Motivated by a desire to cut Plaintiff out of the large income stream he had created, in April 2019, told regulators, employees, clients and the Joint Ventures false information about Plainitff's business practices.

58. Specifically, in April 2019, Norcom filed a false claim with the Texas Department of Savings and Mortgage Lending for allowing unlicensed loan origination activity and for violations of the Texas Finance Code.

59. In addition, on April 4, 2019, in an effort to deter Plaintiff's business partners from transferring their business to Plaintiff with his new broker, employees and/or officers of Norcom told Plaintiff's business partners and employees that he had committed fraud and had lost his mortgage licenses in Texas and South Carolina, all of which was false.

60. Specifically, On or about April 4, 2019, Jim Morin spoke to Plaintiff's partners with Sterling Home Mortgage as well as agents Topher Kauffman and Jessica Brand in Charleston, South Carolina. Jim Morin told them that Plaintiff had been terminated from Norcom due to fraudulent mortgage origination activity, and that the mortgagae licence regulating authorities had already revoked Plaintiff's licenses in multiple states including Texas and South Carolina.

61. In addition, on or about April 4, 2019, Greg Radding and Russell Baboff were in Dallas, Texas and told to Plaintiff's partner, Jessica Hargis of Veracity Lending and owner of Hargis realty, that Plaintiff had been terminated from Norcom due to fraudulent mortgage origination activity, and that the mortgagae licence regulating authorities had already revoked Plaintiff's licenses in multiple states including Texas and South Carolina.

62. In an effort to keep Plaintiff's close employee, Sabra Lane, from telling Plaintiff's business partners the truth, on or about April 4, 2019, Gerry Gordon came into Plaintiff's office in Columbia, South Carolina and terminated Ms. Lane because of the fraud and unlicensed loan officer activity Plaintiff allegedly committed.

63. After Plaintiff's termination, Norcom then took the commissions and earnings resulting from the business Plaintiff had established and kept them for itself.

64. As a result of breaching these contracts and these fraudulent acts, Norcom is liable to Plaintiff for all actual, consequential and punitive damages in an amount to be determined at trial.

## **FOR A FIFTH CAUSE OF ACTION**
(Abuse of Process)

65. The preceding allegations are incorporated herein as if repeated verbatim.

66. Norcom reported Plaintiff to the Texas Department of Savings and Mortgage Lending for allowing unlicensed loan origination activity and for violations of the Texas Finance Code.

67. After the initial report to the Texas Department of Savings and Mortgage Lending, Norcom continued to submit false information and misleading and/or false documents and provided false affidavits/testimony to the Texas Department of Savings and Mortgage Lending during the prosecution of the case.

68. In addition, Norcom failed to request a dismissal of the case against Plaintiff after realizing it was baseless.

69. Norcom did not make these reports and continued to provide false information, misleading/false documents and false testimony out of a legitimate belief that Plaintiff was in violation of any mortgage regulation or commiting any actual fraud, but had an ulterior purpose, namely a desire to cut Plaintiff out of the large income stream he had created by spreading false information regarding Plaintiff's integrity, honesty and his ability to properly and lawfully work as a mortgage broker with the intent that these reports would deter current and future clients from working with Plaintiff after he was terminated.

70. Plaintiff has suffered damages in the form of attorney's fees and costs in defending the Texas action, and in the form of harm to his reputation having to explain to customers/prospective customers why he had a pending mortgage fraud claim.

71. As a result, Norcom is liable to Plaintiff for all actual, consequential and punitive damages resulting from this behavior in an amount to be determined at trial.

WHEREFORE, Plaintiff requests a trial by jury and prays for judgment against the Defendants for all actual, consequential and resulting damages including, but not limited to, all lost wages, commissions, mental anguish, embarrassment, humiliation, loss of reputation, an award for punitive damages, attorney's fees and costs, pre-judgment interest, and for all other damages found to be fair and reasonable as determined by this Court in an amount to be determined at trial.

This 23rd day of September, 2021.

GOODWYN LAW FIRM, LLC


By:     *s/T. Jeff Goodwyn, Jr.*
T. Jeff Goodwyn, Jr., Esquire (Fed. Bar No.: 9890)
2309 Devine Street
Columbia, South Carolina 29205
(803) 251-4517
(803) 251-4527 (f)
JGoodwyn@Goodwynlaw.com
ATTORNEY FOR PLAINTIFF

Columbia, South Carolina