

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| JAKE COKER,  §<br>　　　　Plaintiff,　　　　　§<br>　　　　　　　　　　　　　　§<br>vs.　　　　　　　　　　　　§　　Civil Action No. 3:20-03071-MGL<br>　　　　　　　　　　　　　　§<br>NORWICH COMMERCIAL GROUP, INC.,　§<br>PHIL DEFRONZO, GERRY GORDON,　§<br>RUSSELL BABOFF, GREG RADDING, and　§<br>JIM MORIN,　　　　　　　§<br>　　　　Defendants.　　　　§ | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE AND DEFENDANTS' MOTION TO DISMISS, AND DENYING
DEFENDANTS' MOTION TO STRIKE**

### I.　INTRODUCTION

Plaintiff Jake Coker (Coker) brings this action against Norwich Commercial Group, Inc. (Norcom) and its corporate officers and employees Phil DeFronzo, Gerry Gordon, Russell Baboff, Greg Radding, and Jim Morin (collectively, the Individual Defendants). In his amended complaint, he alleges civil conspiracy against the Individual Defendants; defamation against Norcom and the Individual Defendants (collectively, Defendants); breach of contract against Norcom; breach of contract accompanied by a fraudulent act against Norcom; and abuse of process against Norcom. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court is Defendants' request for the Court to take judicial notice, their motion to dismiss Coker's amended complaint under Federal Rule of Civil Procedure 12(b)(6), and their alternative motion to strike Coker's claim for punitive damages under Rule 12(f).

Having carefully considered the motions, the response, the reply, the record, and the applicable law, it is the judgment of the Court the request to take judicial notice will be granted in part and denied in part, the motion to dismiss will be granted in part and denied in part, and the motion to strike will be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

Coker worked as a branch manager in Irmo, South Carolina for Norcom, where he originated mortgages in multiple states. He earned a salary as well as commissions on the mortgages he sold or originated.

According to Coker, Norcom began a joint venture program (the Joint Ventures) with certain real estate companies starting in approximately November 2018, for which it owned fifty-one percent and the joint partner owned forty-nine percent. He alleges the branch manager who recruited the joint partner would receive Norcom's fifty-one percent share, while Norcom would make money on the interest rates for the loans that were sold through the Joint Ventures. Between December 2018 through March 2019, Coker claims he recruited three Joint Ventures, in Texas and South Carolina.

Coker contends that when Norcom became aware his fifty-one percent share in the Joint Ventures generated about $50,000 per month in income to Coker, in April 2019, it terminated him within a week. He claims Defendants manufactured and spread false accusations against him that he had committed fraud, was allowing unlicensed loan origination activity, and had lost his

mortgage originator license, all to provide justification for his termination and to discourage his business connections from continuing to conduct future mortgage business with him. Coker alleges Defendants did so to receive the income generated by the Joint Ventures.

Around the same time, Coker alleges Norcom reported him to the Texas Department of Savings and Mortgage Lending (Texas SML) for allowing unlicensed loan origination activity and for violations of the Texas Finance Code. Although the Texas SML initially sent Coker a letter stating its intention to revoke his residential mortgage loan originator license, ultimately, Coker contends, the Texas SML found no violation of the Texas Finance Code and declined to take disciplinary action against him or his mortgage origination licenses.

Norcom also reported Coker to the California Department of Financial Protection and Innovation (DFPI), formerly known as the Department of Business Oversight (DBO). Coker eventually came to a settlement with the DFPI, which states Coker declined to admit to any of the allegations made against him. Coker asserts that no regulatory authority has ever made a finding of wrongdoing against him.

Coker states, since his termination, he has struggled to find work in mortgage brokerage, as well as to create, maintain, and develop relationships with realtors and other referral sources because of the false accusations by Defendants.

Coker initiated this action against Defendants in the Richland County Court of Common Pleas. Norcom removed the matter to this Court and Defendants filed a motion to dismiss. The Court granted the motion to dismiss without prejudice and Coker filed an amended complaint. Defendants then filed the instant motion to dismiss, or in the alternative, motion to strike Coker's claim for punitive damages, and concurrent request for the Court to take judicial notice. Coker

filed his response in opposition to the motion, and then Defendants filed their reply in support. The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

### III.   STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### IV.   DISCUSSION AND ANALYSIS

Defendants' motion fails to challenge Coker's cause of action for breach of contract. Accordingly, the Court declines to dismiss that claim.

#### A.   *Whether the Court should take judicial notice*

Defendants ask this Court to take notice of certain documents it attaches in support of its motion. Coker maintains the Court should refuse to consider evidence outside the face of the amended complaint to resolve a 12(b)(6) motion to dismiss and, alternatively, judicial notice of several of the documents is improper.

In reviewing a 12(b)(6) motion, courts may take judicial notice of matters of public record. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts may also consider documents attached to the motion "so long as they are integral to the complaint and authentic[.]" *Id.*

Attached to Defendants' motion, they provided the Branch Manager Agreement and the Retail Plus Branch Manager Agreement (BMAs); a letter to regulators sent by Norcom (Regulator Letter); a letter to Coker from the Texas SML (Texas SML letter); an email to Coker's counsel from the Texas SML (Texas SML email); an "Accusation" made against Coker by the DBO (DBO Accusation); a settlement agreement between the DFPI and Nicholas Coplien, another Norcom employee allegedly implicated in Coker's conduct (Coplien Settlement Agreement); and a print-out of Coker's licensing status as listed by the Nationwide Mortgage Licensing System website (Licensing Status Print-Out). Additionally, they attached Coker's settlement agreement with the DFPI (Coker Settlement Agreement) to their reply.

Because Coker did not object to the judicial noticeability of the Texas SML letter, the Texas SML email, the DBO accusation, or the Coplien Settlement Agreement, which are matters of public record, the Court will take judicial notice and consider them in its analysis below. Fed. R. Evid. 201. The Court will also take judicial notice of Coker Settlement Agreement, a matter of public record, which Defendants filed with their reply. The Court declines to take judicial notice of the BMAs, the Regulator Letter, and the Licensing Status Print-Out, however, because they are outside the public record. Instead, the Court will next determine whether "they are integral to the complaint and authentic," *Trimble Navigation Ltd.*, 484 F.3d at 705, allowing the Court to nevertheless consider them.

Coker challenges the authenticity of the BMAs, the Regulator Letter, and the Licensing Status Print-Out.  Because there is a dispute as to the documents' authenticity, the Court declines to consider them in resolving Defendants' motion.  *Cf. Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (treating an Incident Report as if it had been attached to the complaint because plaintiff failed to argue it was not integral to the complaint or not authentic).

Further, even if there was no dispute as to authenticity, the Court would refuse to consider the Regulator Letter and the Licensing Status Print-Out because they are peripheral to the amended complaint.  Defendants make no assertion that Licensing Status Print-Out is integral to the amended complaint.  To be integral to the complaint, a document must do more than contain information that is important to the plaintiff's claims.  Instead, its very existence must give rise to the legal rights asserted.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint." (internal quotation marks omitted)).

Coker declines to specifically reference the Regulator Letter in his amended complaint.  Although it may be inferred that the letter constitutes the basis for Coker's allegation that Norcom maliciously reported Coker to the Texas SML, and thus is integral to the amended complaint, it is possible other correspondence gave rise to that claim.

The Court therefore takes judicial notice of the Texas SML letter, the Texas SML email, the DBO accusation, the Coplien Settlement Agreement and the Coker Settlement Agreement, but declines to consider BMAs, the Regulator Letter, and the Licensing Status Print-Out for the purposes of resolving this motion.

> **B.     Whether the Court should dismiss Coker's Tort Claims because the amended complaint fails to plausibly plead the statements allegedly made by Defendants were false**

Defendants insist the false statements underlying Coker's Tort Claims are matters of public concern, and thus Coker must plead and prove their falsity in this action. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (explaining the First Amendment requires a plaintiff to prove falsity in defamation cases involving speech touching on matters of public concern). Coker maintains the statements are not a matter of public concern and, in the alternative, he has adequately pled falsity.

Coker alleges Defendants stated he had lost his mortgage licenses in Texas and South Carolina. He claims this is false because no regulatory authority had revoked or suspended his licenses. He contends Defendants told others he was fired for unlawful brokerage activity. He maintains this is false because he engaged in no such unlawful activity and because that was a pretextual basis for his firing. *Cf. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) (determining district court properly dismissed a false signature cause of action because Harrison did not sufficiently state "how the signature was fraudulent").

Even considering Coker's settlement with DFPI, the Court's analysis remains unchanged, as the settlement explicitly states Coker declined to admit to any of the allegations made against him. For the purposes of a motion to dismiss, Coker has sufficiently pled the falsity of Defendants' statements, so the Court need not address whether the statements were a matter of public concern. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta.*"). Therefore, the Court will decline to dismiss the Tort Claims on this ground.

### C.  Whether the Court should dismiss Coker's civil conspiracy claim against the Individual Defendants

As in Defendants' previous motion, they complain Coker's civil conspiracy claim against the Individual Defendants relies on the same facts as his other claims. Coker responds that he alleges in this cause of action the Individual Defendants may have been acting outside of the scope of their employment when they undertook this alleged scheme against Coker.

As the Court explained in its previous order, a successful civil conspiracy claim "must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), *overruled on other grounds by Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021).

Stated another way, "where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong." *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607, 612 (S.C. 1981) (internal quotation omitted), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

Despite amendment, Coker's civil conspiracy claim continues to fail to allege additional facts in support of the cause of action. The amended complaint alleges the Individual Defendants entered an agreement to "take from Plaintiff the commissions and other earnings due Plaintiff." Amended Complaint ¶ 24. Yet, all actions Coker alleges the Individual Defendants to have taken in furtherance of this conspiracy also constitute the basis of Coker's other claims. That Coker posits, in the alternative, these actions may have been taken outside the scope of the Individual Defendant's employment is of no import. The alleged acts themselves are the same.

Here, "[t]he only alleged wrongful acts plead [sic] are those for which damages have already been sought." *Todd*, 278 S.E.2d at 611. Because Coker's claim for civil conspiracy merely repackages his other causes of action, it fails to state a claim. The Court thus need not reach the Individual Defendants' other arguments as to this cause of action. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*."). Accordingly, the Court will grant this section of Defendants' motion to dismiss.

### D.     *Whether the Court should dismiss Coker's defamation claim against Defendants*

Defendants maintain Coker's defamation claim should be dismissed because he fails to adequately allege the required details of the allegedly defamatory statements. Coker counters that his amended complaint contains details of his defamation claim sufficient to survive a Rule 12(b)(6) motion.

Under South Carolina law, a defamation claim requires "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001).

Here, Coker's amended complaint adequately pleads his defamation claim. Rather than making vague assertions that Defendants made false statements, Coker separates into separate paragraphs different instances of alleged defamation. For example, Paragraph 34 lists Jim Morin as the speaker and Coker's partner with Sterling Home Mortgage and agents Topher Kauffman and Jessica Brand as the hearers of a statement that Coker had been terminated because of fraudulent mortgage origination activity, and that the regulating authorities had already revoked

9

his licenses in Texas and South Carolina. He alleges this conversation took place in Charleston, South Carolina on or about April 4, 2019. Paragraphs 35 through 37 contain the same type of information for other statements.

By differentiating between different statements made, adding dates and locations, and specifying the speaker and hearer, Coker has sufficiently cured his pleadings as to this cause of action. *See Iqbal*, 556 U.S. at 678 (explaining a complaint must merely set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Consequently, the Court will deny Defendants' motion to dismiss this claim.

### E.     Whether the Court should dismiss Coker's breach of contract accompanied by a fraudulent act claim against Norcom

Defendants aver Coker failed to plead all the elements of his breach of contract accompanied by a fraudulent act claim, specifically reliance on the alleged fraudulent act. Coker insists he need not plead reliance and, in the alternative, he relied on Norcom's promise to pay commissions when working to generate business.

A breach of contract accompanied by a fraudulent act claim requires a plaintiff to establish "(1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002). When the alleged fraudulent act is a misrepresentation, the plaintiff must establish reliance. *See Vann v. Nationwide Ins. Co.*, 185 S.E.2d 363, 364–65 (S.C. 1971) (reasoning there was no fraudulent act when "[t]here was no change of position of the [plaintiff] because of any fraudulent act on the part of the [defendant]").

Coker first contends he need only prove—rather than plead—reliance. But, Coker must plead all elements of his claim in his complaint, in addition to proving them at trial. Coker's first argument thus fails. The Court next turns to whether Coker's allegations of reliance state a claim.

10

Coker asserts Norcom entered the contract, promising to pay Coker commissions, without the intent of actually doing so. He alleges he relied on those representations when he worked to generate business for Norcom. Breach of contract accompanied by a fraudulent act, however, "requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making." *Ball v. Canadian Am. Express Co., Inc.*, 442 S.E.2d 620, 623 (S.C. Ct. App. 1994) (explaining fraudulent acts related to the making of the contract give rise to a fraud cause of action, rather than a breach of contract accompanied by a fraudulent act). This alleged reliance thus fails to establish a fraudulent act for the purposes of this cause of action.

Coker has failed to plead reliance on a fraudulent act connected with the breach, rather than the formation, of the contract. Therefore, because he fails to state a breach of contract accompanying a fraudulent act claim, the Court will grant Defendants' motion to dismiss this cause of action. The Court need not reach the Individual Defendants' other arguments as to this claim. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### F.     Whether the Court should dismiss Coker's abuse of process claims against Norcom

Defendants maintain Norcom's interactions with the Texas SML, which give rise to Coker's abuse of process claim, are absolutely privileged. They also contend Coker's allegation Norcom declined to request dismissal of the Texas SML case fails to state a claim. Coker argues there is no absolute privilege here. He also insists he can bring a claim based on Norcom's failure to request dismissal of the Texas SML case.

In its previous Order, this Court determined Texas substantive law applies to Coker's abuse of process claim. The elements of an abuse of process claim in Texas are:

> [1] that the defendant made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process; [2] that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and [3] that damage resulted to the plaintiff as a result of such irregular act.

*Futerfas v. Park Towers*, 707 S.W.2d 149, 160 (Tex. App. 1986). But, "[t]he mere issuance of process is not actionable as an abuse of process." *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex. Civ. App. 1975). Instead, "[t]here must be use of the process, and that use must of itself be without the scope of the process, and, hence, improper." *Id.*

### 1. *Whether Norcom's interactions with Texas SML are absolutely privileged*

Here, Coker alleges after initially reporting him to the Texas SML, Norcom "continued to submit false information and misleading and/or false documents and provided false affidavits/testimony" to the Texas SML. Amended Complaint at ¶ 67.

Texas affords absolute privilege for "communications uttered or published in the course of . . . proceedings before . . . boards and commissions which exercise quasi-judicial powers." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). A governmental board is quasi-judicial if it has the "authority not only to hear but to decide the matters coming before it, or to redress grievances of which it takes cognizance." *McAfee v. Feller*, 452 S.W.2d 56, 57–58 (Tex. Civ. App. 1970); *see also Reagan*, 166 S.W.2d at 913 (reasoning the Railroad Commission is a quasi-judicial body because the law confers it power to conduct investigations and hearings).

This privilege "extends to all perceived torts or other causes of action[.]" *Attaya v. Shoukfeh*, 962 S.W.2d 237, 240 (Tex. App. 1998) ("[A]ny statement made in the trial of any case by anyone cannot constitute the basis for a defamation or any other civil action."). "The falsity of the statement or the malice of the utterer is immaterial[.]" *Reagan*, 166 S.W.2d at 912. Courts differentiate between unsolicited initial communications, which are conditionally privileged, and

submission of material during and in connection with a pending investigation or proceeding, which are absolutely privileged. *Cuba v. Pylant*, 814 F.3d 701, 715 (5th Cir. 2016).

Texas SML is a quasi-judicial body. It has the authority to conduct investigations into complaints made against entities or individuals "believed to be engaging in an activity that is regulated by the department." 7 Tex. Admin. Code § 52.10(b). Additionally, it has the authority to decide the matters before it and take action, such as revoking the license of the person being investigated. Tex. Fin. Code § 157.024(a); *see also* Texas SML Letter.

Coker complains about communications made during a pending investigation. The Court determines those communications are thus absolutely privileged. *See Cuba*, 814 F.3d at 715–16 ("Once the police or prosecuting authority begins an investigation and solicits further statements, the absolute privilege obtains and shields subsequent statements, even if malicious and false."). To the extent Coker attempts to plead this cause of action based on communications outside the scope of the privilege, Coker failed to plead them with the requisite particularity under Rule 9(b). *See* Fed. R. Civ. P. 9(b) (establishing a heightened pleading standard for claims sounding in fraud). Thus, these allegations fail to state a claim.

### 2.     *Whether Norcom's failure to request dismissal gives rise to an abuse of process claim*

Coker's allegation that Norcom failed to request a dismissal similarly fails to state a claim. First, Texas law requires an investigation into the merits of any complaint made to the Texas SML. *See* 7 Tex. Admin. Code § 52.11(c) (Upon receipt of a complaint related to an activity it regulates, the Texas SML "shall initiate an investigation into the merits[.]"); *see also* Tex. Fin. Code § 56.301(b) (Upon receipt of a complaint the Texas SML "shall investigate the actions and records of a person[.]"). The Court failed to find a provision that allows a complainant to withdraw its complaint and halt an already proceeding investigation.

Second, "[t]he mere maintenance of a [proceeding], even if done with malicious intent, will not support a cause of action for abuse of process." *Detenbeck v. Koester*, 886 S.W.2d 477, 481 (Tex. App. 1994). "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App. 1965). Coker failed to allege Norcom has used the process in any nonprivileged way outside the "scope of the process[.]" *See Tandy Corp.*, 527 S.W.2d at 249 ("The mere issuance of process is not actionable as an abuse of process.").

Accordingly, the Court will dismiss Coker's abuse of process claim. The Court need not reach the Individual Defendants' other arguments as to this cause of action. *Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### G.     Whether the Court should strike Coker's claim for punitive damages

Finally, Defendants ask the Court to strike, under Federal Rule of Civil Procedure 12(f), Coker's claim for punitive damages because he fails to sufficiently plead constitutional actual malice. Coker argues his allegations that Defendants knowingly defamed him suffice to state a claim for punitive damages.

In defamation cases where the speech at issue involved matters of public concern, a plaintiff may recover punitive damages only if he proves the statements were made with constitutional actual malice. *Phila. Newspapers, Inc.*, 475 U.S. at 774–75. Constitutional actual malice requires a defendant knew their statements were false or harbored "serious doubts" about their truth. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Coker has adequately pled the statements were made with knowledge of their falsity. Thus, assuming without deciding that Defendants' alleged statements were matters of public concern,

14

the amended complaint plausibly pleads the statements were made with constitutional "actual malice." The Court therefore declines to strike Coker's punitive damage claims.

## V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court Defendants' request for judicial notice is **GRANTED IN PART AND DENIED IN PART** as described in this Order.

Defendants' motion to dismiss is also **GRANTED IN PART AND DENIED IN PART**. Coker's civil conspiracy, breach of contract accompanied by a fraudulent act, and abuse of process claims are **DISMISSED WITHOUT PREJUDICE**. *See Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) (holding whether to dismiss a complaint with or without prejudice for failure to state a claim is within the discretion of the district court). And, Defendants' motion to strike Coker's punitive damages claim is **DENIED**.

The Court grants Coker a final opportunity to cure the deficiencies of his complaint. He may file a motion to amend his complaint with a proposed second amended complaint rectifying the aforementioned pleading deficiencies **within fourteen calendar days of this Order**. If he elects against further amendment, the case will continue as to his defamation, breach of contract, and punitive damages claims.

  **IT IS SO ORDERED.**

Signed this 23nd day of June 2022, in Columbia, South Carolina.

                                                                     s/ Mary Geiger Lewis
                                                                     MARY GEIGER LEWIS
                                                                     UNITED STATES DISTRICT JUDGE